IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. |
| v. | ) | 06-00168-01-CR-W-GAF |
| | ) | |
| KAMRON E. DEHGHANI, | ) | |
| | ) | |
| Defendant. | ) | |

## DETENTION ORDER

On April 26, 2006, I held a detention hearing. I find by clear and convincing evidence that defendant poses a danger to the community and that no single condition of release or combination of conditions of release will assure the safety of the community.

## I. BACKGROUND

On April 20, 2006, an indictment was returned charging defendant with one count of publishing a notice to exchange child pornography over the internet, in violation of 18 U.S.C. § 2251(d); one count of attempted receipt of child pornography over the internet, in violation of 18 U.S.C. § 2252(a)(2); one count of attempted distribution of child pornography over the internet, in violation of 18 U.S.C. § 2252(a)(2); one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4); and one count of criminal forfeiture pursuant to 18 U.S.C. § 2253(a). Defendant was arrested and appeared before me on April 21, 2006, for his initial appearance. During the initial appearance proceeding, the government filed a motion for a detention hearing and a

motion to continue the hearing for three days. Those motions were granted, and defendant was remanded to the custody of the United States Marshal pending the hearing.

On April 26, 2006, a detention hearing was held. Defendant appeared in person, represented by Assistant Federal Public Defender Anita Burns. The government was represented by Assistant United States Attorney Katharine Fincham. The parties stipulated that the court consider the information in the Pretrial Services Report of Pretrial Services Officer Susan Pinkerton as the testimony she would give, under oath, if called as a witness. The following witnesses testified:

1. Nicholas O'Neal
2. Barrett J. McConnell
3. Jacinta Hernandez
4. Detective Maggie McGuire, Kansas City, Missouri, Police Department.

In addition, the following exhibits were admitted:

P. Ex. 1    Defendant's written instructions to witnesses

P. Ex. 2    Defendant's signed Miranda waiver

P. Ex. 3    Defendant's signed statement to Kansas City, Missouri, Police Department

P. Ex. 4    Belton, Missouri, Police Department Report of defendant's arrest

P. Ex. 5    Child Protection Center Report

2

Case 4:06-cr-00168-DGK   Document 11   Filed 04/27/06   Page 2 of 13

      P. Ex. 5a        DVD of interview with four-year-old child at Child Protection Center

      P. Ex. 6        Diagram of neighborhood drawn by Detective McGuire

Defendant made the following proffer: Both defendant's wife and mother are willing to co-sign a bond. Defendant has had employment and still has employment. Defendant has no criminal history and no incentive to leave this area since all of his family are here. Defendant made no attempt to leave the area during the month he was aware of the investigation. Defendant is willing to go to a halfway house if the court is concerned about his living so close to his children.

Finally, I took judicial notice of the statutory presumption against release set out in 18 U.S.C. § 3142(e)(3).[1]

## II. FINDINGS OF FACT

On the basis of the information contained in the report of Pretrial Services Officer Susan Pinkerton and the evidence presented during the hearing, I find that:

      1.        Defendant, 20, is a lifelong resident of the Western District of Missouri. Defendant reported that he had been living at his current residence for the past year; however, defendant's wife stated that have lived at their current address for the past month and previously lived at a different address in the same complex for six months.

---

[1] That subsection provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense . . . involving a minor victim under section . . . 2251, . . . [or] 2252(a)(2). . . of this title.

3

2. Defendant's father lives in Riverside, and defendant has only telephone contact with him. Defendant's mother and step father live in Belton about one street away from defendant (P. Ex. 6). Defendant has a half-sister, age 2, from his father's remarriage.

3. Defendant has an 11th grade education. For the past three months, he has been employed as a subcontractor for his landlord on an as-needed basis. He previously was employed as a night manager with CVS Pharmacy for seven months and with Leisure Lawn Care for three years. Defendant recently began his own lawn care business and is just now beginning to receive return calls on bids he placed with potential customers. Defendant reported to Pretrial Services that his only asset is a 1987 Dodge Ram valued at $800.

4. Defendant is generally in good health; however, he takes medication for depression and anxiety. Defendant reported that he has not used marijuana since age 14 or 15; however, Nicholas O'Neal, Barrett McConnell, and Jacinta Hernandez have observed defendant smoking marijuana during the last year several times per week. Defendant told Pretrial Services that he does not consume alcohol; however, the testimony from the above witnesses, who lived with defendant during the last few months, indicates that defendant has indeed consumed alcohol during the past year.

5. Defendant has no prior criminal history, although he has an outstanding warrant from Belton, Missouri, for resisting arrest which was issued on Aril 21, 2006, with

4

a $1,000.00 bond.

6. Over the past several months, Nicholas O'Neal, age 18; his girl friend, Jacinta Hernandez, age 21; and Barrett McConnell, age 17, lived with defendant and his wife, who was previously Ms. Hernandez's best friend. While living with defendant, O'Neal, McConnell, and Hernandez observed defendant ingest alcohol and use marijuana.

7. Ms. Hernandez has known defendant for four or five years. She moved in with defendant and his wife in approximately November or December 2005. When Ms. Hernandez was using defendant's computer, she clicked on an icon which started a downloaded video. The video was called "Daddy changing two-year-old's diaper". It featured a man on a bed rubbing his penis on a baby girl. Ms. Hernandez told defendant's wife who watched the video, and then the two women deleted it. Defendant's wife, Darla, stated that defendant has been looking at child pornography since they lived at their previous residence which Ms. Hernandez knew to be three to four years earlier. Ms. Hernandez observed child pornography on defendant's computer at least five times. She always showed it to defendant's wife who would delete it.

8. On March 9, 2006, Detective Maggie McGuire went to defendant's residence and asked for his permission to seize his computer. Defendant said that he knew what this was about, that McConnell was the one who had been looking at child pornography. Defendant voluntarily allowed Detective McGuire to seize his computer.

5

9. O'Neal, McConnell, and Hernandez were at the house on March 9, 2006, when police recovered defendant's computer. After the computer was taken, defendant was trying to talk McConnell into saying he was the one who had put the child pornography on the computer. O'Neal and Hernandez heard defendant say he would give McConnell things if he would say he had been viewing the child pornography. Defendant told McConnell that he would give him his truck; and if McConnell went to jail, defendant would give him $50 per week. McConnell agreed to take the fall. Defendant gave McConnell his truck and McConnell put the title in the glove compartment.[2] Defendant started telling McConnell what to say and made McConnell try to memorize things. Defendant told McConnell to say he had known defendant for five years, he had called posing as defendant to get the internet passwords reset, etc. O'Neal saw a piece of paper written by defendant giving a "version" of McConnell as the one viewing the child pornography (P. Ex. 1). O'Neal found the paper on defendant's dresser and gave it to McConnell. Defendant would write things down that he wanted his roommates to say to police and ask them to memorize his written version so that he would not get in trouble. Hernandez refused to take part and refused to accept the written version prepared by defendant.

---

[2]Defendant had purchased the truck from someone who had signed the back of the title, but defendant had not put the truck in his name yet so he never signed the title, he just gave it to McConnell.

10. Defendant asked Hernandez to tell police that she used the screen name LILKELLIINMO. Defendant said he had been using that screen name to try to talk to people about pornography on the internet, or try to get people to meet him (the screen name was purported to be a young girl) so that he could "catch" them and call the police. Hernandez refused to say she used this screen name.

11. O'Neal saw defendant trying to get McConnell to accept some pictures of child pornography, but McConnell did not want to. Hernandez saw defendant with these pictures, and defendant said he was going to put the pictures in McConnell's pocket and in the truck.

12. McConnell never told defendant he was not going to take the fall, but defendant figured it out. Once defendant figured McConnell was not going to take the fall for him, he was very angry. In front of O'Neal, defendant said he would do anything he could do to get McConnell in trouble for the same thing because he wasn't going to jail. Defendant said he would take his four-year-old daughter to the hospital and say that McConnell had touched her inappropriately.

13. After defendant figured that McConnell would not take the blame for the pornography, McConnell found several pictures of naked little girls in his pocket, and he found others in the truck defendant had given him. O'Neal and McConnell burned the pictures. O'Neal could tell that McConnell was surprised to find the pictures in his pocket. O'Neal had previously heard defendant say at least ten times that he was going

7

to put pictures on McConnell and in the truck and get him pulled over with the pictures. After McConnell burned the pictures, defendant's wife took her four-year-old daughter to a hospital and reported that McConnell had sexually molested her. The child was questioned by authorities and stated that her father (defendant) had shown her pictures of little kids having sex on the computer, but that no one had ever touched her or tried to touch her inappropriately. She said her mother and McConnell had seen the pictures on the computer too.

      14.     Sometime thereafter, the title to the truck defendant had given McConnell was taken out of the glove compartment. Later, the truck disappeared.

      15.     Defendant previously told McConnell that he made a 14-year-old girl give him oral sex. Defendant told O'Neal if he had the chance he would have sex with an 11-year-old girl named H. Defendant has had contact with H. He would call her on the phone and he talked to her very often. She was supposed to come and live with him for the summer. Defendant told McConnell that he loved this 11-year-old girl and that he would leave his wife for the girl. Defendant said that the girl had seen his penis when he and his wife were in the bedroom. Defendant often argued with his wife about his talking on the phone with the 11-year-old. He purchased prepaid phone cards so that he could talk to her because her number was long distance.

      16.     Defendant took baths with his 2- and 4-year old daughters for longer than the normal time for taking a bath. O'Neal estimated that defendant spent two to four

8

Case 4:06-cr-00168-DGK   Document 11   Filed 04/27/06   Page 8 of 13

hours in the bathroom with his daughters. McConnell observed the long periods of time when defendant was in the bathroom with his daughters and estimated it was about two hours at a time. Defendant said if he gets charged, he might as well go out and commit the crime he is accused of.

17. Hernandez observed that defendant's four-year-old daughter knew a lot about sexual things. She would rub herself sexually. Hernandez heard defendant's two-year-old complain about her private parts hurting. When her mother changed the girl's diaper, Hernandez observed that the girl's private area was very red, and the girl would cry, not wanting anyone to touch her because it hurt. The two-year-old once had popcorn in her private parts, and Hernandez heard defendant's wife talking to his mother about how the four-year-old said she tried to put a tampon in the two-year-old's private parts, and she also tried to put a tampon in herself.

18. On March 21, 2006, defendant was questioned at the South Patrol Division of the Kansas City, Missouri, Police Department. Defendant was advised of his <u>Miranda</u> rights, waived those rights, and agreed to talk to police. For the first hour of questioning, defendant stated that he had never seen child pornography, that he had caught McConnell looking at child pornography, and that Ms. Hernandez had used the screen name LILKELLIINMO on his computer. Detective McGuire confronted defendant with e-mails between himself and his wife in which he had apologized to his wife about the pictures she had found on the computer. Defendant was also confronted

9

with e-mail he had sent to Cyber Angels, an organization which teaches internet safety to children. In the e-mail, defendant said he posed as a minor or preteen and had received solicitations on the internet. In the e-mail to Cyber Angels, defendant stated that he wanted to work for that organization. Once he was confronted with these e-mails, defendant admitted that he had e-mailed Cyber Angels as a cover up for getting in trouble with his wife for having the pictures of child pornography. Defendant admitted that he was responsible for the pornography on the computer.

19. On the day the arrest warrant was issued on this federal indictment, Detective McGuire went to defendant's residence to execute the warrant. Defendant was not home. Later that evening, several police officers went to the residence and observed a television on in an upstairs bedroom, but no one answered their knocks at the door. The officers went into a vacant unit adjoining defendant's duplex. They observed that the shared attic was partially open, and they went into the attic. Shortly thereafter, defendant's mother arrived at his residence to get some clothes for defendant's daughters. She allowed the officers to come inside defendant's residence. No one was found inside the residence, but several lights were on, the television was on, and the police observed shorts with a wet spot lying on the floor, indicating that someone had been there recently. The officers went back to the adjoining vacant unit and checked the status of the attic. The officers observed defendant in the attic. They ordered him to come toward them, but he jumped back into his apartment through his attic door. As the officers approached

10

the front of defendant's apartment, they heard a crash of glass and a thud. They ran to the side of defendant's apartment and saw that he had crashed through a glass window on the second floor and had landed on an air conditioning unit. Defendant had to be subdued, as he resisted arrest.

20. Once defendant was arrested, Hernandez heard his mother say that she would take the fall for him because she did not want him to go to jail. She also said she would kill herself because she could not live without defendant.

21. Defendant attempted to work as a drug informant for the police. He contacted police and said he could work out a deal for drugs or other child pornography. Defendant said he could set up a large cocaine and marijuana deal at a motel, and said he could have that accomplished within a few hours. The police did not take defendant up on his offer.

22. Detective McGuire spoke with defendant's wife who stated that defendant would be on the computer for multiple hours each day. Mrs. Dehghani said she had tried to look at music on the computer and had seen child pornography videos. Mrs. Dehghani told police that she did not feel as threatened by the child pornography because most of it was boy on boy and she and defendant have two girls. Regarding defendant's e-mail about her being upset about the 11-year-old, Mrs. Dehghani said that the 11-year-old was a girl who had spent quite a bit of time at their house. The girl had danced provocatively for the defendant and the defendant had spent multiple hours on the phone with the girl.

Mrs. Dehghani said that defendant had told her he was in love with the 11-year-old, but he later took it back and said he was trying to make her upset.

23.     Defendant faces a maximum prison sentence of 30 years if convicted of count one, 20 years if convicted of counts two or three, and ten years if convicted of count four.

## III.    CONCLUSION

I find by clear and convincing evidence that no single condition or combination of conditions of release will reasonably assure the safety of the community.  Defendant is charged with multiple counts of distributing and receiving child pornography, he attempted to get another individual to take the blame for the computer pornography, he attempted to get yet another individual to take responsibility for the screen name he used, he attempted to frame someone else by planting pictures of child pornography in the person's clothing and truck, he made a false claim of sexual abuse of his four-year-old daughter in retaliation for the person failing to take the blame for the pornography offenses, there are serious allegations that defendant has sexually molested his own children (allegations which are currently being investigated by the Division of Family Services), defendant has admitted to wanting to have sex with an 11-year-old girl with whom he maintains frequent contact, defendant has stated that he forced a 14-year-old girl to perform oral sex on him, defendant has attempted to involve himself in drug activity to help his current legal situation, and he lied to Pretrial Services about his drug

and alcohol use. In addition, I find that defendant has failed to rebut the presumption provided for in 18 U.S.C. § 3142(e) that there is no condition or combination of conditions of release that will reasonably assure the safety of the community.

It is, therefore

ORDERED that the defendant be committed to the custody of the Attorney General or his authorized representative for detention pending trial. It is further

ORDERED that the defendant be confined in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. It is further

ORDERED that the Attorney General or his authorized representative ensure that the defendant is afforded reasonable opportunity for private consultation with his counsel. It is further

ORDERED that, on order of a court in the Western District of Missouri, the person in charge of the corrections facility where defendant is confined deliver the defendant to a United States Marshal for his appearance in connection with a court proceeding.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 27, 2006

13